FILED
CLERK

11:36 am, Sep 27, 2017

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
PAUL JENSEN, individually and on behalf of
all others similarly situated,

      Plaintiff,

   -against-

CABLEVISION SYSTEMS
CORPORATION, a Delaware Corporation;
ALTICE N.V., and DOES 1 through 100,
Inclusive,

      Defendants.
--------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:17-cv-00100 (ADS)(AKT)

**APPEARANCES:**

**CARNEY BATES & PULLIAM, PLLC**
*Co-Counsel for the Plaintiff*
519 W. 7th Street
Little Rock, Arkansas 72201
   By: Joseph H. Bates, Esq., Of Counsel

**THE CASEY LAW FIRM LLC**
*Co-Counsel for the Plaintiff*
20 NE Thompson Street
Portland, Oregon 97212
   By: M. Ryan Casey, Esq., Of Counsel

**MILSTEIN, JACKSON,**
**FAIRCHILD & WADE LLP**
*Co-Counsel for the Plaintiff*
10250 Constellation Blvd., 14th Floor
Los Angeles, California 90067
   By: Gillian L. Wade, Esq.,
     Sara D. Avila, Esq., Of Counsel

**KU & MUSSMAN, P.A.**
*Co-Counsel for the Plaintiff*
6001 NW 153rd Street, Suite 100
Miami Lakes, Florida 33014
   By: Brian T. Ku, Esq.,
     Louis I. Mussman, Esq., Of Counsel

**MAYER BROWN LLP**
*Attorneys for the Defendants*
1221 Avenue of the Americas
New York, New York 10020
     By:    Matthew D. Ingber, Esq., Of Counsel
1999 K Street, N.W.
Washington, DC 20006
     By:    Archis A. Parasharami, Esq., Of Counsel


**SPATT, District Judge**:

The Plaintiff Paul Jensen ("Jensen" or the "Plaintiff") commenced this action individually and on behalf of others similarly situated against the Defendants, Cablevision Systems Corporation ("Cablevision"), and Altice N.V. ("Altice") (collectively the "Defendants") for damages stemming from violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 and N.Y. Gen. Bus. Law § 349. This case arises from allegations by the Plaintiff that the Defendants have used the Plaintiff's wireless router, which was leased from the Defendants, to broadcast a public Wi-Fi network, without the Plaintiff's authorization. The Plaintiff asserts two bases for this Court's jurisdiction: federal question jurisdiction pursuant to 28 U.S.C. § 1331 and jurisdiction over the state law claim under 28 U.S.C. § 1332(d).

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(1), Rule 12(b)(2) and Rule 12(b)(6) to dismiss the Plaintiff's entire complaint. The Court pauses here to note that the Plaintiff's complaint uses footnotes, which is contrary to this Court's Individual Rule II.A. Notwithstanding this infraction, the Court will consider the Plaintiff's papers in rendering its decision. However, the Court advises the Plaintiff's counsel that any future filings that contain footnotes will not be considered by this Court.

For the following reasons, the Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted with respect to the Plaintiff's CFAA claims for failure to state a claim. The motion is denied in all other respects.

## I. BACKGROUND

### A. The Factual Background

The following facts are drawn from the Plaintiff's complaint, and for the purposes of the instant motion, are accepted as true.

### 1. The Parties

The Plaintiff is a resident of Brooklyn, New York and a subscriber to Cablevision's private Wi-Fi service, Optimum Online Wi-Fi ("Optimum Online Wi-Fi"). Cablevision provided Jensen a router in conjunction with his purchase of Optimum Online Wi-Fi.

Cablevision is an American corporation, which is incorporated under the laws of the state of Delaware. Cablevision provides Optimum Online Wi-Fi, along with other cable and internet services, to customers in New York, New Jersey, Connecticut and Pennsylvania and is registered with the New York Department of State. Its principle place of business is located at 1111 Stewart Avenue, Bethpage, New York 11714. In June, 2016, Cablevision was acquired by Altice and has since done business in the United States as "Altice USA." Amended Class Action Complaint ¶ 12.

Altice is a Dutch telecommunications company with an international footprint. Its principal place of business is in Amsterdam. Altice "provides and/or oversees" Optimum Online Wi-Fi. *Id*. ¶ 13.

### 2. The Facts

On June 5, 2015, Cablevision entered into a contract with the Plaintiff to provide Optimum Online Wi-Fi for his residence. As part of that agreement, the Plaintiff leased a wireless router

from Cablevision. The Plaintiff had the option to purchase his own wireless router, but chose instead to lease Cablevision's device.

Cablevision's wireless router was used to broadcast Optimum Online Wi-Fi, his personal Wi-Fi network, as provided in his agreement with Cablevision.

This wireless router was also configured to broadcast a "separate, publically accessible" Wi-Fi network ("Optimum Public Wi-Fi"), which became a component, along with other Cablevision wireless routers leased to other customers, of a large-scale, public Wi-Fi network. Amended Class Action Complaint ¶¶ 16, 46. Optimum Public Wi-Fi is accessible to anyone within range of the wireless router and is not password protected. Allegedly, this large-scale, public network is part of a concerted effort by the Defendants to utilize their customer base to compete with cellular networks. The Plaintiff claims that the Defendants are "externaliz[ing] much of the capital and operating costs" of such a network, in order to compensate for the lack of their own network infrastructure. *Id.* ¶ 16.

According to Jensen, he did not authorize Cablevision to use the wireless router to broadcast Optimum Public Wi-Fi. During installation, Jensen was provided with a sales order which contained a document entitled, "General Terms and Conditions of Service." While this document did not contain any reference to Optimum Public Wi-Fi, it did state:

> In addition to these General Terms and Conditions of Service, Subscriber agrees to be bound by the terms of service for the applicable Optimum service as set forth at www.optimum.net, such as Optimum TV, Optimum Online and Optimum Voice, as well as the Cablevision Customer Privacy Notice, as such may be updated from time to time (collectively, the "Terms of Service"), which are incorporated herein by this reference. In the event of any conflict between these Terms and Conditions below and the Terms of Service, the Terms of Service shall control.

*Id.* ¶ 40 (internal citations omitted).

The "Service Terms & Info," a link of which can be found on the Optimum homepage (www.optimum.net), contains the "Agreement for Optimum Online." The "Agreement for Optimum Online," states, "The Optimum Router is preconfigured to distribute a second wireless network (i.e. an Optimum WiFi Hotspot) in addition to the Home Network. This Optimum WiFi Hotspot is separate from the Home Network and is accessible by certain authorized Optimum WiFi users." *Id*. ¶ 43. Cablevision's promotional materials are silent on the topic and its website states that Optimum Public Wi-Fi is broadcast from "shopping centers, major streets, train platforms, parks, marinas, sports fields and more." *Id*. ¶ 19.

When the Plaintiff learned of the existence of the Optimum Public Wi-Fi, he contacted Cablevision to ask that the feature be disconnected. The Plaintiff was told that the feature could not be turned off, and that he was free to purchase and use his own wireless router if he continued to harbor such concerns. A replacement wireless router would cost the Plaintiff between $50 and $200.

The Plaintiff alleges that the Defendants' actions (1) endanger customers' privacy; (2) transfer costs onto customers, including electricity costs; (3) reduce the speed of customer internet access; and (4) expose customers to increased security risks. *Id*. ¶ 21.

A study conducted on wireless routers provided by Comcast, a competitor of Cablevision has determined that wireless routers that broadcast a second Wi-Fi network use more electricity than wireless routers that only broadcast a single Wi-Fi network. *Id*. ¶¶ 26-27. This study used a business wireless router, and concluded that hosting a second Wi-Fi network could cost a customer up to $1.90 per month, based on the average cost of power in the Mid-Atlantic. Alex Gizis, "Is Your Comcast Public Hotspot Costing You Real Money?" Speedify (June 26, 2014) (available at http://speedify.com/blog/featured/comcast-public-hotspot-cost/).

Jensen claims that he has been forced to incur a higher electricity bill as a result of the Defendants' wireless router. He further alleges that his Optimum Online Wi-Fi network has experienced decreased speeds and that the wireless router leased from the Defendants have been exposed to "possible, additional use by unknown third parties" without his knowledge or authorization. Amended Class Action Complaint ¶ 51.

**B.  The Relevant Procedural History**

On January 6, 2017, the Plaintiff commenced this action by filing a class action complaint in this Court. The complaint set forth two causes of action: violations of the CFAA, 18 U.S.C. § 1030, and violations of N .Y. General Business Law § 349.

On January 12, 2017, the Plaintiff filed the Amended Class Action Complaint.

On March 27, 2017, the Defendants filed the instant motion to dismiss all of the Plaintiff's claims pursuant to Rule 12(b)(1), Rule 12(b)(2) and Rule 12(b)(6).

On July 6, 2017, the Defendants submitted a Notice of Supplemental Authority regarding the U.S. Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017). On July 14, 2017, the Plaintiff filed a response. The Court reviewed both letters.

## II.  DISCUSSION

**A.  Standard of Review**

### 1.  FED. R. CIV. P. 12(b)(1)

When a defendant brings a motion to dismiss for lack of subject-matter jurisdiction, it is the plaintiff's burden to establish the existence of subject-matter jurisdiction by a preponderance of the evidence. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010) (citing *Makarova v. United States*, 201

F.3d 110, 113 (2d Cir. 2000)); *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113; *see also Aurecchione*, 426 F.3d at 638 ("After construing all ambiguities and drawing all inferences in a plaintiff's favor, a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." (internal citations and quotation marks omitted)).

In its assessment of whether it has subject-matter jurisdiction, the Court "must accept as true all material factual allegations in the complaint, but [the Court is] not to draw inferences from the complaint favorable to the plaintiff. *J.S. ex rel. N.S. v. Attica Cen. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). The Court may also consider documents that are extrinsic to the complaint in its analysis. *N.Y.S. Catholic Health Plan, Inc. v. Acad. O&P Assoc.*, 321 F.R.D. 278, 294 (E.D.N.Y. 2015) (citing *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002)).

### 2. FED. R. CIV. P. 12(b)(2)

In considering a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff has the burden of establishing that this Court has jurisdiction over a defendant. *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 510 (S.D.N.Y. 2016) (internal citations omitted); *Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). To meet this burden at the motion to dismiss stage, the plaintiff is only required to make a *prima facie* showing of jurisdiction. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). When the parties have not yet begun discovery, as is the present case, the Court accepts the allegations in the Plaintiff's amended complaint to be true, but

may also rely on additional supporting material to determine if the Plaintiff meets this burden. *See Uebler v. Boss Media, AB*, 363 F. Supp. 2d 499, 501 (E.D.N.Y. 2005) (Spatt, J.); *see also Casville Invs., Ltd. v. Kates*, No. 12-cv-6968, 2013 WL 2365816, at *3 (S.D.N.Y. July 8, 2013); *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14-cv-3756, 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) ("[A] plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'") (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir.1998)). The Court is permitted to rely on material outside the pleading. *See Minnie Rose LLC*, 169 F. Supp. 3d at 510 (internal citations omitted).

### 3. FED. R. CIV. P. 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

not suffice.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss.  FED. R. CIV. P. 8(a)(2).  Under Rule 8, a complaint is not required to allege "detailed factual allegations."  *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555).  "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).  The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.

B.  Subject-Matter Jurisdiction

The Defendants contend that Jensen's claims should be dismissed for lack of subject-matter jurisdiction, under Rule 12(b)(1).  According to the Defendants, Jensen originally filed a putative class action case in this District in July, 2015 alleging violations of (1) the CFAA, (2) common-law trespass to chattels, (3) unjust enrichment, and (4) N.Y. General Business Law § 349, seeking to certify a nationwide class and New York subclass.  Defendants' Memorandum of Law in Support of Motion to Dismiss at 3.  Cablevision filed a motion to dismiss, which was fully briefed on May 16, 2016.  The parties meanwhile, commenced discovery.  Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss at 3.

On November 4, 2016, Jensen filed a letter seeking certification of a New York class only, pursuant to N.Y. General Business Law § 349. *Id*.

On December 28, 2016, the parties filed a Stipulation of Voluntary Dismissal, seeking a dismissal on the remaining claims without prejudice, pursuant to FED. R. CIV. P. 41(a)(1)(ii).

On January 6, 2017, Judge Wexler dismissed all the counts in the complaint without prejudice. Judge Wexler found that with the dismissal of the first three counts, as requested by the parties, the court no longer had jurisdiction as to the remaining state law claim, N.Y. General Business Law § 349. All claims were dismissed without prejudice and the Clerk of the Court was directed to close the case. *Id*. at 4. That same day, on January 6, 2017, the Plaintiff filed the first complaint in *this* action in this Court, adding a new defendant, Altice.

First, the dismissal of the original claims of the first case has no res judicata effect because it was not a final judgment. Judge Wexler entered his order dismissing the claims "without prejudice." Thus, Jensen remained free to renew his claims in a new action. "It is well established that a dismissal without prejudice has no *res judicata* effect on a subsequent claim." *Camarano v. Irvin*, 98 F.3d 44, 47 (2d Cir. 1996) (per curiam); *accord Sandstrom v. ChemLawn Corp.*, 904 F.2d 83, 86 (1st Cir. 1990) ("[A] voluntary dismissal under Fed. R. Civ. P. 41(a) wipes the slate clean, making any future lawsuit based on the same claim an entirely new lawsuit unrelated to the earlier (dismissed) action."); *Morales v. Suny Purchase College*, No. 14-cv-8193, 2015 WL 7430864, at *3 (S.D.N.Y. Nov. 19, 2015) ("Nevertheless, claims dismissed without prejudice in an earlier action are not barred by *res judicata*." (internal citations omitted)). Accordingly, the Defendants' arguments as to the *previous* case are irrelevant to *this* Court's subject-matter jurisdiction.

Further, the Defendants' reliance on *United States v. McGann*, 951 F. Supp. 372 (E.D.N.Y. 1997), is misplaced. Although the Court granted the defendant's motion to dismiss the complaint

in *McGann*, it was based on the plaintiff's failed attempt to amend the complaint. The Court noted that in the Second Circuit, the denial of a motion to amend a complaint is not appealable. *McGann*, 951 F. Supp. at n.2. As such, *McGann's* result and reasoning rested on a procedural posture that is not present here.

Accordingly, the Defendants' motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) is denied.

## C. Personal Jurisdiction

The Defendants assert that this Court lacks personal jurisdiction over Altice. In opposition, the Plaintiff argues that at best, the Defendants create a factual dispute that is not properly resolved on a motion to dismiss. The Court finds that for the reasons stated below, Altice is subject to specific personal jurisdiction in this matter.

To establish a prima facie case of personal jurisdiction, "a Plaintiff must demonstrate: (1) proper service of process upon the defendant; (2) a statutory basis for personal jurisdiction over the defendant; and (3) that exercise of jurisdiction over the defendant is in accordance with constitutional due process principles." *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381 (E.D.N.Y. 2015) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012)). In this case, the Defendants do not challenge service of process. Consequently, the Court turns to the second and third elements of a prima facie case for personal jurisdiction.

The Court will determine the existence of personal jurisdiction in accordance with New York Law. *Minnie Rose LLC*, 169 F. Supp. 3d at 512 ("In diversity or federal question cases, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits." (internal citations omitted)). Prior to *Daimler AG v. Bauman*, 134 S. Ct. 746, 187 L. Ed. 2d 264 (2014), New York law required a two-step analysis: (1) the Court must determine

whether there is personal jurisdiction that (a) conforms to New York's general jurisdiction statute, Civil Practice Law and Rules ("CPLR") § 301, or (b) conforms to New York's long-arm jurisdiction statute, CPLR § 302(a); and if so, (2) the Court must find that it's exercise of personal jurisdiction is consistent with the Fifth Amendment's Due Process Clause. *JN Realty LLC v. Estate of Marvin*, 268 F. Supp. 2d 231, 235 (E.D.N.Y. 2003) (Spatt, J.); *see also Stroud*, 91 F. Supp. 3d at 385 (explaining the elements of a prima facie case for personal jurisdiction under New York law); *Uebler*, 363 F. Supp. 2d at 504 ("If there is jurisdiction under New York law, then the Court must evaluate whether the exercise of that jurisdiction comports with the requirements of due process." (internal citations omitted)).

### 1. General Jurisdiction

CPLR § 301 instructs that a corporation "is subject to general personal jurisdiction in New York if it is 'doing business' in the state." *Wiwa v. Royal Dutch Petro. Co.*, 226 F.3d 88, 95 (2d Cir. 2000). "[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917)).

In light of the U.S. Supreme Court's ruling in *Daimler*, it is unclear if New York's statutory jurisprudence remains proper. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014) ("[T]he Court expressly cast doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum."); *accord Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, No. 5:16-cv-35, 2016 WL 7174646, at *4 (D. Vt. Dec. 7, 2016) ("The

Supreme Court's decision in *Daimler* . . . changed the law of general jurisdiction, making it substantially more difficult to establish that type of personal jurisdiction." (citing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016))); *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14-cv-01568, 2015 WL 5091170, at *3 (S.D.N.Y. Aug. 28, 2015) ("[I]t is uncertain if New York's 'doing business' jurisdiction remains viable in light of *Daimler*." (citing *Reich v. Lopez*, 38 F. Supp. 3d 436, 454–55 (S.D.N.Y. 2014))); *Havlish v. Royal Dutch Shell PLC*, No. 13-civ.-7074, 2014 WL 4828654, at *3 (S.D.N.Y. Sept. 24, 2014) ("The Supreme Court in *Daimler* . . . recently 'expressed doubts as to the usefulness of an agency analysis, like that espoused in *Wiwa*, that focuses on a forum-state affiliate's importance to the defendant rather than on whether the affiliate is so dominated by the defendant as to be its alter ego.'" (quoting *Sonera Holding B.V. v. Cukurova Holding AS.*, 750 F.3d 221, 225 (2d Cir. 2014) *cert. denied*, 134 S. Ct. 2888 (2014))).

In *Daimler*, the Court concluded that general jurisdiction only exists where a corporation is "essentially at home." *Daimler*, 134 S. Ct. at 761-62. To determine this, courts must primarily look at the corporation's principal place of business and place of incorporation. *Id*. at 759-60. The Plaintiff does not allege that Altice has incorporated anywhere in the United States, let alone New York, and admits in the amended complaint that its principal place of business is in Amsterdam. Therefore, under either measure, Altice lacks general jurisdiction.

In *Daimler*, the Court articulated an additional, "exceptional case" to find general jurisdiction. If the Plaintiff demonstrates that Altice's contacts with New York are "so 'continuous and systematic' as to render [Altice] essentially at home with the forum state," general jurisdiction may be found. *Id*. at 761. As this is truly an "exceptional case," courts have noted that it is exceedingly rare to find general jurisdiction outside a corporation's principal place of business or

place of incorporation.  *Stroud*, 91 F. Supp. 3d at 387 (citing *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)); *see also SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015) (determining that even if the defendant's contacts to New York could be considered "a substantial, continuous, and systematic course of business," the Supreme Court held in *Daimler* that such contact were insufficient to establish general jurisdiction, because the plaintiffs failed to "establish that this is the 'exceptional case' in which a corporation is 'essentially at home' in a foreign forum such that the Court may exercise general jurisdiction over it.").

In this case, the Plaintiff has not properly alleged that Altice's contacts with New York are so substantial that it is "essentially at home."  Although Altice does have a New York subsidiary, that does not "render it essentially at home."  *Hecklerco, LLC v. YuuZoo Corporation Ltd.*, No. 15-cv-5779, 2017 WL 2294606, at *5 (S.D.N.Y. May 11, 2017).  Thus, the Court finds that Altice is not subject to general jurisdiction in the State of New York.

### 2.  Specific Jurisdiction

The Defendants allege that the Plaintiff's allegations solely relate to Altice's subsidiary, Cablevision, which became known as Altice USA after the Altice/Cablevision transaction, and may not be attributed to Altice for the purpose of obtaining specific personal jurisdiction.  For the reasons set forth below, the Plaintiff has established a prima facie case and the Court will exercise specific jurisdiction over Altice in this matter.

For the Court to exercise specific jurisdiction over a non-domiciled entity, it must be subject to New York's long-arm statute, CPLR § 302(a), which states that:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state;  or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. CPLR § 302.

"To establish personal jurisdiction under section 302's ["transacts any business" prong], two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank SAL*, 732 F.3d 161, 168 (2d Cir. 2013)). "A plaintiff attempting to establish personal jurisdiction over a defendant who has never been present in the state and only acted through subsidiaries or agents need only show that the subsidiary 'engaged in purposeful activities in this State,' that those activities were 'for the benefit of and with the knowledge and consent of' the defendant, and that the defendant 'exercised some control over' the subsidiary in the matter that is the subject of the lawsuit." *Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 476-77 (E.D.N.Y. 2015) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988)); *accord Pfizer Inc. v. Perrigo Co.*, 903 F. Supp. 14, 16 (S.D.N.Y.1995) ("[A] foreign corporation can sell goods and perform other activities in New York through its subsidiaries, subjecting the parent corporation to personal jurisdiction in New York." (internal citations omitted)).

A formal agency relationship between the Defendants and the subsidiary/agent is not required. *Ingenito*, 89 F. Supp. 3d at 467 (internal citations omitted). "Personal jurisdiction over a parent corporation whose subsidiary has transacted business in New York exists when the nondomicilliary parent corporation knew of and consented to the acts of its in-state subsidiary that gave rise to the cause of action, and exercised some control over [the subsidiary] in the matter." *Ingenito*, 89 F. Supp. 3d at 477 (internal quotations omitted).

Cablevision, or Altice USA, is a public subsidiary that is majority owned by Altice. Through Cablevision, Altice transacts business in New York. Amended Class Action Complaint ¶ 9. Cablevision's wireless network is operated with the knowledge, and with some level of direction from Altice. *See id.*; *Joint Application of Altice N.V. and Cablevision Systems Corp. for Authority Pursuant to Section 214 of the Communications Act of 1934, as Amended, to Transfer Control of Domestic and International Section 214 Authorizations* at 9-10 (available at https://ecfsapi.fcc.gov/file/60001329304.pdf) ("If the Transaction is approved, Altice would bring to Cablevision its considerable experience in upgrading and managing Cablevision's network. the transmission and IT assets of its service provider affiliates. Furthermore, Altice intends to continue investing in and upgrading Cablevision's IT systems, including customer care, service provisioning and billing systems, to improve processes and be in an even better position to serve customers. . . .Altice anticipates continuing to invest in WiFi services to complement its fixed wireline investment."). Further, Altice "derives substantial revenue" from Cablevision's Wi-Fi operations in the New York area. Amended Class Action Complaint ¶ 9.

The Court finds that for the purposes of CPLR § 302(a)(1), Altice has engaged in sufficient purposeful activity in New York to determine that it has "transacted business," and that this

Plaintiff's claims arise from this business. Therefore, the Plaintiff has sufficiently presented a *prima facie* case to establish specific personal jurisdiction over Altice in this matter.

Although the Defendants argue that Cablevision is not an "agent" or "mere department" of Altice so that this Court has no personal jurisdiction over Altice, the Defendants' argument focuses on the scope of general jurisdiction, *see e.g.*, CPLR § 301; *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984), not the applicability of specific jurisdiction under § 302(a)(1). The Court is unpersuaded that the Defendants' argument is applicable to § 302(a)(1).

### 3. Constitutional Due Process

The Court must now consider whether exercising specific personal jurisdiction over Altice comports with the United States Constitution's Due Process Clause. *International Shoe* and its progeny made clear that a defendant must "have certain minimum contacts [with the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Licci*, 732 F.3d at 169 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). If the Court finds that there are sufficient "minimum contacts," the Court must also find that exercising jurisdiction would be reasonable under the circumstances. *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 27 (E.D.N.Y. 2016) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). To conduct the second part of the analysis, the Court may look at the following relevant factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief...." *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

As the Second Circuit notes, there is extensive overlap between a CPLR § 302(a) analysis, which the Court has just conducted, and a constitutional due process analysis, because "if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have 'purposefully availed itself of the privilege of doing business in the forum and [to have been able to] foresee being hauled into court there . . . or the assertion of specific jurisdiction would somehow otherwise 'offend traditional notions of fair play and substantial justice." *Licci*, 732 F.3d at 170 (internal quotations omitted). Thus it is especially unusual to find that a defendant has met the requirements of § 302(a)(1), yet failed a due process analysis. The Court is unaware of any such decisions in the Second Circuit. *See id.*

As the Court has already determined that Altice satisfies the provision of § 302(a)(1), the Court also concludes that Altice has established purposeful availment appropriate to establish "minimum contacts." *Id.*; *see also Burger King Corp.*, 471 U.S. at 475-78.

Regarding the "reasonableness" inquiry, the Court notes that the Second Circuit instructed district courts that "dismissals resulting from the application of the reasonableness test should be few and far between." *Metro. Life Ins. Co.*, 84 F.3d at 575. The parties have raised no credible argument that any of the relevant factors point to dismissal. As such, the Court's exercise of specific personal jurisdiction over Altice is consistent with the U.S. Constitution's Due Process Clause.

Accordingly, the Court finds that there is specific personal jurisdiction over Altice. For the foregoing reasons, the Defendants' motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2) is denied.

**D. The Computer Fraud and Abuse Act Claim**

The Defendants contend that the Plaintiff's complaint fails to state a plausible claim based on a violation of the CFAA. In particular, the Defendants assert that (a) the Plaintiff consented to allowing the Defendants to use the wireless router to set up Optimum Public Wi-Fi; and (b) the Plaintiff is unable to satisfy the minimum loss requirement under the CFAA.

In 1984, the U.S. Congress enacted the CFAA to combat forms of "computer crime." At the time, this was largely understood as "hacking or trespassing into computer systems or data." *United States v. Valle*, 807 F.3d 508, 525 (2d Cir. 2015). The CFAA made it a crime to "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." 18 U.S.C. § 1030(a)(4).

Congress also created a civil cause of action under the CFAA if a plaintiff could demonstrate either:

> (I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
> (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (III) physical injury to any person;
> (IV) a threat to public health or safety;
> (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security; or
> (VI) damage affecting 10 or more protected computers during any 1-year period.

18 U.S.C. § 1030(c)(4)(A); *see also id.* at § 1030(g).

The Plaintiff pleads a private right of action pursuant to 18 U.S.C. § 1030(c)(4)(a)(i)(I). Consequently, the Plaintiff must allege that the Defendants: (1) "knowingly and with intent to defraud;" (2) accessed a "protected computer;" (3) "without authorization" or "exceeded their authorized access;" (4) and by means of such conduct furthered the intended fraud and obtained anything of value; and (5) caused "loss to 1 or more persons during any 1–year period ... aggregating at least $5,000 in value." *See id*. at § 1030(c)(4)(A), § 1030(g).

### 1. Consent

The Defendants contend that the Plaintiff failed to properly plead a claim for relief under the CFAA because the Plaintiff consented to the purported use of the wireless router. For the reasons stated below, the Court finds that there is a factual dispute as to whether Jensen consented to use of the wireless router to set up Optimum Public Wi-Fi, which precludes the Court from dismissing the claim at this time.

While the term "without authorization," is not defined within the statute, it has no applicability to this case. *See JBC Holdings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 521 (S.D.N.Y. 2013). It is undisputed that Cablevision had authorization to access *their own* wireless routers for certain uses. The question is whether Cablevision "exceed[ed]" their authorization. According to the CFAA, the term "exceeds authorized access," "means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). The Second Circuit recently ruled that "exceeds authorized access" only covers an individual "who obtains or alters information that he does not have authorization to access for any purpose." *Valle*, 807 F.3d at 511. This narrow reading of the statute is also consistent with the Fourth, and Ninth Circuits. *Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 334 (E.D.N.Y. 2016) (Spatt, J.);

*see also Sebrite Agency, Inc. v. Platt*, 884 F. Supp. 2d. 912, 917-18 (D. Minn. 2012) (adopting the narrower interpretation of the CFAA because it is "more consistent with statutory text, legislative history, and the rule of lenity" and noting that the Eighth Circuit has not yet directly addressed the issue (internal citations omitted)).

While the Second Circuit noted that the First, Fifth, Eleventh, and Seventh Circuits had adopted a broader interpretation of the statute, the Court determined that such a view "would criminalize the conduct of millions of ordinary computer users and place us in the position of a legislature." *Id.* (quoting *Valle*, 807 F.3d at 527); *accord Pakter*, 931 F. Supp. 2d at 521. The Court thereby adopts the Second Circuit's definition of "exceeds authorized access," meaning that liability may only be imposed if one "obtains or alters information that [it] does not have authorization to access for any purpose which is located on a computer that [it] is otherwise authorized to access." *Valle*, 807 F.3d at 511.

The Defendants contend that Jensen consented to Cablevision's broadcast of the Optimum Public Wi-Fi because the Agreement for Optimum Online contained the following explicit language: "The Optimum Router is preconfigured to distribute a second wireless network (i.e. an Optimum WiFi Hotspot) in addition to the Home Network. This Optimum WiFi Hotspot is separate from the Home Network and is accessible by certain authorized Optimum WiFi users." *See* Defendants' Memorandum of Law in Support of Motion to Dismiss at 15. The Plaintiff asserts that this was not part of the contract, and that alternatively, it creates a dispute as to a material fact. For the reasons that follow, the Court concludes that while the Defendants raise a dispute as to this fact, this is not properly determined at the motion to dismiss stage.

According to the Defendants, the Agreement for Optimum Online was incorporated by reference into the contract. Under New York law, "[t]he doctrine of incorporation by reference

requires that the paper to be incorporated into the written instrument by reference must be so described in the instrument that the paper may be identified beyond all reasonable doubt . . . [and] [i]t must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." *Valley Stream Foreign Cars, Inc. v. American Honda Motor Co., Inc.*, 209 F. Supp. 3d 547, 552-53 (E.D.N.Y. 2016) (internal citations and quotations omitted); *accord Serrano v. Cablevision Systems Corp.*, 863 F. Supp. 2d 157, 165 (E.D.N.Y. 2012).

Jensen maintains that he did not agree to any terms when he signed up for wireless internet with Cablevision originally. Amended Class Action Complaint ¶ 37. When his wireless router was installed, he was provided a sales order, which contains a document titled "General Terms and Conditions of Service." The Plaintiff alleges that this document contains the entirety of the contract. *Id.* ¶ 38. One clause in the General Terms and Conditions of Service does mention that there are additional terms of service "set forth at www.optimum.net . . . which are incorporated herein by this reference." *Id.* ¶ 40. However, the website which is referred is the consumer-facing homepage, and only by clicking a link titled "Service Terms & Info" is the visitor brought to a series of additional terms for the various services that Cablevision offers. *Id.* ¶¶ 41-42.

The Defendants' principally rely on *Serrano* to contend that Cablevision's Agreement for Optimum Online is included in the contract. In the Court's view, this case reinforces the factual dispute at issue. In *Serrano*, it was *undisputed* that the terms of service at issue were "incorporated by reference into the work order and were accessible on the Cablevision website." *Id.* at 165. This was the basis for the Court's conclusion that the plaintiff in that case entered into a valid contract with Cablevision. *Id.* In this case, the Plaintiff *disputes* the contention that the Agreement for Optimum Online is incorporated by reference into the contract and alleges that any attempt to do

so in the contract was vague and legally insufficient. Therefore, the lynchpin of the *Serrano* Court's conclusion is not present here. In the Court's view, *Serrano* is not controlling.

The Defendants also rely on *Hammer v. Cablevision of Boston, Inc.*, 18 Misc. 3d 727 (N.Y. Just. Ct. 2007) as an example of a court incorporating Cablevision's online terms of service into a contract. However, the *Hammer* decision is short on details and devoid of reasoning on the matter. The pertinent facts surrounding the terms that are being incorporated by reference are not disclosed in the opinion and the *Hammer* Court does not conduct any sort of legal analysis to reach such a conclusion. This lack of detail does not convince the Court that the document referenced was incorporated into the contract "beyond all reasonable doubt." *Valley Stream Foreign Cars, Inc.*, 209 F. Supp. 3d at 552-53.

The Defendants' argument that the Agreement for Optimum Online is incorporated by reference does not satisfy the first prong of the test under New York law. The General Terms and Conditions of Service's reference to the litany of terms and conditions for a variety of Cablevision products does not identify the terms and conditions that apply to the Plaintiff so that it may be properly identified "beyond all reasonable doubt" at this stage. *See 4Connections LLC v. Optical Commc'ns Grp., Inc.*, 618 F. Supp. 2d 178, 183 (E.D.N.Y. 2009) ("To incorporate a document by reference, New York law requires that the document be referenced beyond all reasonable doubt." (citing *Chiacchia v. Nat'l Westminster Bank USA*, 124 A.D.2d 626, 507 N.Y.S.2d 888, 889-90 (2d Dep't 1986))); *see also Sea Trade Co. v. FleetBoston Fin. Corp.*, No. 03-civ-10254, 2007 WL 1288592, at *4 (S.D.N.Y. May 1, 2007) ("Under New York law, an extrinsic document is deemed to be incorporated by reference only when the agreement specifically references and sufficiently describes the document to be incorporates, such that the latter 'may be identified beyond all

reasonable doubt.'" (quoting *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (internal quotations omitted))).

The reference in the General Terms and Conditions of Service is to the Optimum branded homepage, not the specific terms of service that are at issue. Further, the "Terms of Service," as defined incorporates additional Cablevision services that are inapplicable to an Optimum Online residential customer. This includes terms and conditions for non-subscribers and for businesses. Amended Class Action Complaint ¶¶ 41-43. Accordingly, the Court finds that at the very least, there is a triable issue of fact as to whether the Agreement for Optimum Online is incorporated by Reference. Because a genuine issue of material fact exists as to whether the Defendants accessed the Plaintiff's wireless router without authorization, the Defendants' motion is denied on that basis.

### 2. CFAA Minimum Loss Requirement

The Defendants further argue that the Plaintiff's damages for his CFAA claims are deficient because the pleading fails to meet the CFAA's minimum loss requirement. In opposition, the Plaintiff contends that he may aggregate all putative class members' claims for the purposes of meeting the statutory requirement. For the reasons stated below, the Court finds that the Plaintiff failed to satisfy the statutory loss requirement under 18 U.S.C. § 1030(c)(4)(A)(i)(I).

In order to properly plead damages under the Plaintiff's CFAA claim, he must allege "loss to 1 or more persons during any 1-year period … aggregating at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I). "Damage" is defined by the CFAA as "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8). The CFAA explains "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages

incurred because of interruption of service." *Id.* § 1030(e)(11). The Plaintiff is required to plead damages or losses of $5,000 as per the minimum statutory threshold specified in § 1030(c)(4)(A)(i)(I). *See Register.com, Inc. v. Verio*, 356 F.3d 393, 439 (2d Cir.2004) (citing *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 520–23 (S.D.N.Y.2001)); *See also DoubleClick*, 154 F. Supp. 2d at 522 ("Caselaw further supports the conclusion that all injuries under § 1030(g) are subject to § 1030(e)(8)'s $5,000 threshold, whether termed 'damage' or 'loss.'").

In this regard, Jensen pleads five types of damage or loss: (1) increased electricity costs; (2) invasion of his privacy; (3) decreased internet speeds; (4) increased security risks; and (5) the replacement cost of a new wireless router.

The Plaintiff's allegations concerning increased security risks, decreased internet speeds and invasion of his privacy are not cognizable economic losses under the CFAA. *See DoubleClick*, 154 F. Supp. 2d at 524 n.33 ("[O]nly economic losses are recoverable under § 1030(g)." (internal citations omitted)). In order for a form of damage or loss to be used to meet the statutory damages threshold, the damage or loss must be economic. *See id.* The Plaintiff's complaint fails to allege that Jensen suffered any economic damages at all due to any of the three categories of damages. As such, the Court finds that any security or privacy risks that the Plaintiff is exposed to or decreased internet speeds as a result of the Optimum Public Wi-Fi are not cognizable losses under the CFAA.

For the remaining two categories, the Plaintiff's individual damage allegations fail to reach the $5,000 statutory threshold. As Jensen pleads in the complaint, "consumers wishing to opt out of broadcasting a secondary Wi-Fi network from their homes are left with no recourse other than to buy an entirely new wireless router, costing anywhere from $50 to $200." Amended Class

Action Complaint ¶ 33. The Court will assume that for purposes of calculating the statutory threshold that the replacement cost of a wireless router is $200.

The final damage or loss alleged by Jensen is increased electricity costs that are incurred as a result of the additional electrical power used due to using a wireless router that is configured to use Optimum Public Wi-Fi. This includes additional power both when the Optimum Public Wi-Fi network is being used and when it is not being used. The Plaintiff does not specify in the complaint what his additional electricity costs from Optimum Public Wi-Fi were, but he does attach a study that concluded that hosting a public Wi-Fi hotspot for Comcast, one of Cablevision's competitors, cost up to $22.80 per year for a Philadelphia resident. Alex Gizis, "Is Your Comcast Public Hotspot Costing You Real Money?" Speedify (June 26, 2014) (available at http://speedify.com/blog/featured/comcast-public-hotspot-cost/). Even assuming a higher average cost of power in Brooklyn, New York and a less efficient router, it is highly improbable that Jensen's extra electricity costs approached $100 let alone $5,000. As a result, when the Court combines the cognizable losses that are covered under the statute, Jensen fails to allege enough damages or loss to meet the requirement under the CFAA.

The Plaintiff tries to circumvent this fact by claiming that the Court should aggregate putative class members' damages or losses. For the reasons set forth below, this argument is unavailing.

"As a general rule, until a class action is certified pursuant to Rule 23 of the Federal Rules of Civil Procedure, the claims of potential class members cannot be considered." *Biscone v. JetBlue Airways Corp.*, 681 F. Supp. 2d 383, 386 (E.D.N.Y. 2010) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 310 N. 1, 96 S. Ct. 1551, 47 L. Ed. 2d 810 (1976)); *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 76 (E.D.N.Y. 2008) ("[I]n the absence of certification, there is no class action

under Rule 23. The unnamed class members are not technically part of the action until the court has certified the class; therefore, once the named plaintiffs' claims are dismissed, there is no one who has a justiciable claim that may be asserted." (internal citations and quotations omitted)).

The Plaintiff asserts that the Court should aggregate damages across the entire putative class and cites a series of out-of-circuit cases that purport to conclude that district courts have been willing to do so if a defendant's conduct uniformly impacts the putative class members' computers. *See, e.g.*, *See, e.g., In re Toys R Us, Inc., Privacy Litig.*, No. 00-cv-2746, 2001 WL 34517252, at *11 (N.D. Cal. Oct. 9, 2001); *In re Apple & AT&T Antitrust Litig.*, 596 F. Supp. 2d 1288, 1307-1308 (N.D. Cal. 2008); *Mortensen v. Bresnan Commun.*, No. 10-cv-13, 2010 WL 5140454, at *7 (D. Mont. Dec. 13, 2010). These cases ignore Second Circuit jurisprudence regarding putative class actions as well as countervailing out-of-circuit caselaw. *See, e.g.*, *Hayes v. Packard Bell, Nec.*, 193 F. Supp. 2d 910, 912 (E.D. Tex. 2001) (dismissing CFAA claims in a putative class action because the named plaintiff is not able to meet the $5,000 statutory damages threshold); *Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 900 (N.D. Ill. 2014) ("The CFAA does not mention class actions at all in its civil remedy provision, *see* 18 U.S.C. § 1030(g), which strongly suggests that, under the anti-aggregation rule, the economic damages claims of absent class members may not be aggregated."); *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1320 (W.D. Wash. 2014) ("Plaintiffs must meet the damages requirement themselves, and cannot rely on absent members of their putative class. (citing *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975))).

Currently, the Court is unaware of any case in the Second Circuit where a district court aggregated damages across a putative class in order to meet the CFAA's statutory threshold. Additionally, "[t]he Second Circuit has not yet addressed whether losses can be aggregated for

purposes of the CFAA before a class is certified, but it has indicated approval of *DoubleClick's* through exploration of the CFAA." *Bose v. Interclick, Inc.*, No. 10-civ.-9183, 2011 WL 4343517, at *6 (S.D.N.Y. Aug. 11, 2011) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 439-40 (2d Cir. 2004)). The *DoubleClick* Court concluded that in order for a plaintiff to "aggregate[ damage and loss] across victims and over time," it must be for a "single act." 154 F. Supp. 2d at 523; *accord Mount v. PulsePoint, Inc.*, No. 13-civ.-6592, 2016 WL 5080131, at *9 (S.D.N.Y. Aug. 17, 2016) ("This Court has previously held that for purposes of the $5,000 threshold, damages 'may only be aggregated across victims and over time for a single act.'" (citing *DoubleClick*, 154 F. Supp. 2d at 523)). Therefore, the Court will analyze the CFAA's $5,000 statutory damages requirement using the Plaintiff's individual allegations. *See, e.g.*, *Fink v. Time Warner Cable*, No. 08-civ.-9628, 2009 WL 2207920, at *4 (S.D.N.Y. July 23, 2009) (analyzing the plaintiff's claim and concluding that she did not meet CFAA's statutory loss requirement).

Further, contrary to the Plaintiff's contentions, Cablevision's configuration of the wireless routers to broadcast the Optimum Public Wi-Fi does not constitute the "same act" and as such, cannot be aggregated to meet the $5,000 threshold. Turning to the statute itself, the relevant "act" is defined as follows: "[Whoever] intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). The Plaintiff alleges that Cablevision "intentionally accessed the [wireless routers] of Plaintiff and Class members . . . Cablevision made the wireless routers it provided to Plaintiff and Class members capable of receiving a command to generate public Wi-Fi signals." Amended Class Action Complaint ¶ 32.

While the Plaintiff did acknowledge that wireless routers individually are combined to create the Optimum Public Wi-Fi network, *see* Amended Class Action Complaint ¶ 70, the

Plaintiff fails to allege that wireless routers share information of any sort with each other.  As the *DoubleClick* Court acknowledged, it is theoretically possible for a "single act" under the statute to involve multiple computers.  *See Sachdev v. Singh*, No. 16-civ-7114, 2016 WL 768861, at *5 (S.D.N.Y. Feb. 26, 2016) (explaining that *DoubleClick* requires a plaintiff to demonstrate that a "single act" caused at least $5,000 in damage (citing *DoubleClick*, 154 F. Supp. 2d at 523-25)). "For example, if someone accessed a White House computer and through that computer erased information on State Department, Central Intelligence Agency, and FBI computers, the value of these damages and losses could be aggregated for the purposes of meeting [the CFAA's statutory] damages threshold." *DoubleClick*, 154 F. Supp. 2d at 524 n.32.  However, Cablevision is alleged to have individually accessed the Plaintiff's wireless router as well as the putative class members' wireless routers; it has not been alleged that the Defendants obtained information on one putative class members' router through another's router.  Therefore, the Plaintiff's allegation that the entire Optimum Public Wi-Fi network constitutes a "single act is refuted by the statute's plain language," *id*. at 524, and the facts at issue.

In the instant case, in the amended complaint, the Plaintiff pleads that all his claims under the CFAA resulted in the same damage, namely increased electricity costs.  Amended Class Action Complaint ¶¶ 76-78.  Given that the Court finds that the Plaintiff is unable to aggregate such damages, the Plaintiff is unable to demonstrate that the Defendants violated the CFAA in a manner that has caused the Plaintiff damages or losses of at least $5,000 regarding any CFAA claim.

Therefore, the Court finds that the complaint fails to adequately state a claim for relief under the CFAA.  Accordingly, the Court grants the Defendants' motion to dismiss the Plaintiff's CFAA claims pursuant to Rule 12(b)(6) with prejudice.

**E.  The State Law Claim**

The Plaintiff's remaining claim is a state law claim that arises under N.Y. Gen. Bus. Law § 349. Jensen contends that under 28 U.S.C. § 1332(d), the Court has jurisdiction over such a claim because "the action involves 100 or more class members; at least one member of the proposed class is a citizen of a State different from the State of citizenship of Defendants and the matter in controversy exceeds $5 million in sum or value." Amended Class Action Complaint ¶ 7. The Court finds that the Plaintiff has properly alleged that the parties are minimally diverse and that the proposed class members' claims aggregate to exceed the $5,000,000 requirement. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013) (explaining the requirements under 28 U.S.C. § 1332(d)).

### III. CONCLUSION

For the reasons stated above, the Defendants' motion pursuant to Rule 12(b)(6), to dismiss the Plaintiff's CFAA claims is granted. The motion is denied in all other respects.

It is **SO ORDERED**:

Dated: Central Islip, New York

September 27, 2017

_/s/ Arthur D. Spatt_

ARTHUR D. SPATT

United States District Judge